UNITED STATES of AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MICHAEL TWEH

and

UNCLE MIKE'S CHICKEN, LLC,

     Plaintiffs,                  DEMAND FOR JURY TRIAL

 -vs-                        Case No.
                               Hon.

FOOD CARTS MANUFACTURING, INC.,

HD RECOVERY LLC,

POLICE OFFICER CASEY STUTZMAN,

POLICE OFFICER LINCOLN SUSZEK,

CITY OF ALPENA, and

REPOCAST.COM, INC.,

     Defendants,

          jointly and severally.

## **COMPLAINT & JURY DEMAND**

### **Jurisdiction**

1.    This court has federal question jurisdiction pursuant to 42 U.S.C. §1983 and

    28 U.S.C. §§1331, 1337.

1

2.   This court may exercise supplemental jurisdiction over the related state law claim arising out of the same nucleus of operative facts which give rise to the Federal law claims.

## Parties

3.   The Plaintiffs to this lawsuit reside in the City of Alpena, in the County of Alpena, in the State of Michigan.

4.   FOOD CARTS MANUFACTURING, INC. ("FCMI") is a foreign corporation doing business in the State of Michigan.

5.   Defendant HD RECOVERY LLC ("HDRLLC"), is a Michigan corporation doing business in Michigan, at all times relevant, this Defendant acted in its own capacity and as an agent for FCMI and REPOCAST.COM, INC.

6.   Defendant POLICE OFFICER CASEY STUTZMAN ("STUTZMAN") is a police officer and employee of the City of Alpena and was, at all times relevant, acting under color of law and in the course of his employment; he is being sued in his individual capacity.

7.   Defendant POLICE OFFICER LINCOLN SUSZEK ("SUSZEK ") is a police officer and employee of the City of Alpena and was, at all times relevant, acting under color of law and in the course of his employment; he is being sued in his individual capacity.

2

8.    Defendant CITY OF ALPENA ("CITY OF ALPENA") is, at all times relevant to this Complaint, an organized municipal corporation existing under the laws of the State of Michigan.

9.    Defendant REPOCAST.COM, INC. ("RCCI") is a Michigan corporation doing business in Michigan; at all times relevant, this Defendant acted in its own capacity and as an agent for FCMI

## Venue

10.    The transactions and occurrences which give rise to this action occurred, in part, in Alpena County.

11.    Venue is proper in the Eastern District of Michigan.

## General Allegations

12.    On or about January 31, 2022, Anny Jay from FCMI responded to an email from Michael Tweh inquiring about purchasing a custom food trailer.

13.    On or about February 25, 2022, Anny Jay from FCMI provided a quote to Michael Tweh for an 18' American Box Cart trailer made to United States standards with a refrigerator, 3+1 compartment sink, exhaust hood, fryer, griddle, 6 burner stove, workbench refrigerator/freezer with salad bar built-in, air-conditioning unit, water tanks for 55 gallons/65 gallons, fire suppression system, and shipping to Detroit.

14.    Prior to consummation of the contract of sale, FCMI promised to deliver a
       trailer with certain qualities and characteristics, and these promises were
       material representations ("material representations") and express warranties
       and they were false; specifically,

    a.    FCMI promised to deliver an 18' trailer.

    b.    FCMI promised to deliver a trailer with a salad bar workbench in it.

    c.    FCMI promised to deliver a trailer with air conditioning in it.

    d.    FCMI promised to deliver a trailer with 55/65 gallon tanks in it.

15.    On or about February 25, 2022, Michael paid FCMI a down payment of
       $5,000.00 which FCMI required before any work on the trailer would start.

16.    On or about March 22, 2022, having received the specifications for the trailer
       from FCMI, Michael Tweh sent an email to Moe Farimani at FCMI noting that
       the width of the trailer on the contract was incorrectly listed as 6.5' rather than
       8'; the purpose of the email was to confirm that the width of the trailer was 8'
       and not 6.5'.

17.    Moe responded in writing, "Yeah it's 18x8."

18.    On or about May 4, 2022, Moe Farimani sent Michael Tweh photos to show
       that production of the trailer had officially gotten underway.

19.   On August 10, 2022, Michael Tweh and his father-in-law drove to Detroit to pick up the food trailer and on that date, Michael Tweh paid in full - a total of $30,610.00 – for a certain 2022 FCM American Trail VIN R6PMICD28NB000770 ("the trailer") before taking delivery.

20.   On August 10, 2022, when Plaintiff paid in full for the trailer, any security interest in the trailer which Defendant FCMI may have had was extinguished.

21.   Upon taking delivery, Plaintiff discovered several areas of damage on the outside of the trailer.

22.   Upon taking delivery, Plaintiff discovered that the trailer dimensions were not what was represented by FCMI; The trailer was 13.2' in length and not 18' as promised.

23.   Upon taking delivery, Plaintiff discovered that there was no salad bar workbench as promised.

24.   Upon taking delivery, Plaintiff discovered that there was no air conditioning unit as promised.

25.   Upon taking delivery, Plaintiff discovered that the water tanks were 10 gallons each instead of 55 gallons as promised.

26.   Upon taking delivery, Plaintiff discovered that the lights on the trailer were not wired to US standards – Plaintiff had to hire an electrician to rewire the lights.

27.   Upon taking delivery, Plaintiff discovered that the gas lines were not compliant with the requirements of the USA or Michigan – Plaintiff had to purchase new gas lines, two new propane tanks, and a regulator in order to make the trailer usable and able to pass local inspection.

28.   On or about August 11, 2022, Plaintiff contacted FCMI and complained of all of the problems/deficiencies with the trailer.

29.   Rather than fix the problems with the trailer, FCMI told Plaintiff that he could not prove that the dimensions were incorrect or that the items promised were missing.

30.   Plaintiffs also requested a refund in exchange for return of the trailer and FCMI refused, deciding instead to block his phone number and cease communications with Plaintiff.

31.   On or about August 31, 2022, the State of Michigan issued a title for the trailer in the name of UNCLE MIKE'S CHICKEN, LLC with no recorded lien.

32.   On or about September 23, 2022, Chase – the credit card Plaintiff used to pay for the trailer, determined that Plaintiff had indeed been defrauded and reimbursed $13,425.00 to Plaintiff's credit card.

6

33.  Plaintiff began receiving daily telephone calls from debt collectors stating that Michael owed $13,425.00 to FCMI

34.  On or about April 8, 2023, Michael Tweh was in the trailer, open for business in Alpena, Michigan.

35.  On April 8, 2023, neither HDRLLC nor FCMI had any legal right to repossess Plaintiffs' trailer.

36.  Moreover, Plaintiffs on that day possessed the exclusive right to the trailer.

37.  Further, no court order had ever been obtained by any of the Defendants to this lawsuit that would have allowed any person or entity other than Plaintiffs to possess or repossess their trailer.

38.  Finally, there was no any lien on nor security interest in the trailer that would have allowed any of the Defendants to this lawsuit to possess or repossess the trailer on April 8, 2023.

39.  On or about April 8, 2023, HDRLLC's tow truck parked near the trailer and the HDRLLC's agent began attempting to remove the trailer from the hitch while Plaintiff and a family  friend were inside the trailer cooking with 425-degree oil.

40.  Before HDRLLC's agent could remove the trailer from the hitch or do anything else, Plaintiff got out of the trailer asked HDRLLC's agent what he was doing.

41.  Plaintiff then called the police and requested assistance.

42.  STUTZMAN  arrived on the scene and separated Plaintiff  and HDRLLC's agent.

43.  The family friend then contacted Plaintiff's wife, asking her to bring the title to the trailer to their location.

44.  SUSZEK  arrived on the scene and moments later, Plaintiff's spouse arrived on the scene with the unencumbered title to the trailer ("the title") showing that the trailer had no lien on it.

45.  Plaintiff showed the unencumbered title to SUSZEK, STUTZMAN and HDRLLC's agent.

46.  At no time did HDRLLC's agent show either police officer a court order for possession of the trailer.

47.  At no time did HDRLLC's agent possess a court order for possession of the trailer.

48.  There was no Court order for the repossession of the trailer.

49.    At no time did HDRLLC's agent show either police officer any evidence or documentation of any security interest in the trailer.

50.    At no time did HDRLLC's possess any evidence or documentation of any security interest in the trailer.

51.    There was no security interest in the trailer at any time after Plaintiff paid in full for the trailer and took delivery of it.

52.    At that point, Plaintiff's father-in-law, who was a banker and had expertise in secured transactions, arrived at the scene and explained to STUTZMAN and to SUSZEK  that the repossession was illegal – that without a security interest and without a court order, property cannot be legally repossessed.

53.    At that point, in spite of actual knowledge that the trailer had no lien on it and actual knowledge that HDRLLC had no court order to repossess the trailer, nd with actual knowledge that there was no known security interest in the trailer, STUTZMAN, with the assistance of  SUSZEK, ordered the Plaintiff to stand down, back up, and allow HDRLLC's agent to unhook the trailer from Plaintiff's truck and repossess it establishing a "curbside courtroom" and acting as judge and jury in violation of the Plaintiffs' civil rights.

54.   STUTZMAN  and SUSZEK  then ran a VIN check through the Michigan

Secretary of State's database and confirmed that there was no lien on the trailer

in spite of this, they continued to allow HDRLLC's agent to steal the trailer.

55.   STUTZMAN and SUSZEK  then asked HDRLLC's agent to contact his

company in order to obtain documentation of either a lien on the trailer or a

judgment entitling someone to repossess the trailer.

56.   After an hour of waiting, HDRLLC could produce no  documentation of either

a lien on the trailer or a judgment entitling anyone to repossess the trailer.

57.   It was clear that the repossession of the trailer was illegal and the police

officers at that point were obligated to correct the error of law they made in

their curbside courtroom.

58.   In spite of the clear fact and indisputable law that HDRLLC had no right to

possess the trailer on its own behalf or on anyone else's behalf, the

STUTZMAN and SUSZEK  determined that HDRLLC was free to leave with

the trailer.

59.   Prior to the trailer being towed away by HDRLLC, Plaintiff explained to

STUTZMAN  and SUSZEK  and HDRLLC that the hot oil in the fryers was

not covered, and the fryers needed to be secured prior to transport or they

would fall, cause damage to the other equipment, and spill the oil.

60.   STUTZMAN then walked over to HDRLLC's agent's window and had a
      conversation with the driver that was inaudible to the other people on the scene
      – upon information and belief, STUTZMAN  determined that it was okay for
      HDRLLC's agent to leave without securing the fryer with hot oil in them and
      allowed HDRLLC's to leave without doing so.

61.   As police and all of the bystanders watched, HDRLLC's agent began towing
      the trailer away and as he turned out of the parking lot, hot oil began spilling
      all over the road – and the inside of the trailer; this was noted by both Plaintiff
      and SUSZEK who walked closer to the road to see the oil spilled all over the
      road.

62.   STUTZMAN and SUSZEK and HDRLLC's agent damaged the trailer by
      failing to secure the fryers for transport and allowing hot oil to spill all over the
      inside of the trailer.

63.   Plaintiffs and other witnesses repeatedly explained to STUTZMAN and
      documented with clear title that the repossession of the trailer was illegal.

64.   HDRLLC, on the other hand, was unable to provide STUTZMAN  any court
      order nor lien that would be the basis for his right to repossess the trailer.

11

65.    At the same time, OFFICER CASEY STUTZMAN had actual knowledge that there was no lien on the trailer, obtained directly from the Michigan Secretary of State.

66.    With Plaintiffs' explanation and documentation, HDRLLC's lack of documentation of any lien or court order, and his actual knowledge that there was no lien on the trailer, STUTZMAN had all of the information he needed to tell HDRLLC to leave the Plaintiffs alone and go to Court and get an order to repossess if he could do so legally.

67.    Instead, STUTZMAN ordered the Plaintiffs to allow HDRLLC to steal the trailer in broad daylight.

68.    Defendant STUTZMAN knew or should have known the limits of his lawful authority to order the repossession of the trailer by a party without legal process, valid lien, or other court order, and when the trailer's owners are present, objecting to the repossession, and showing documentation of an exclusive ownership interest unencumbered by any lien or judgment.

69.    SUSZEK also had actual knowledge that there was no lien on the trailer, obtained directly from the Michigan Secretary of State.

70.   With Plaintiffs' explanation and documentation, HDRLLC's lack of documentation of any lien or court order, and his actual knowledge that there was no lien on the trailer, SUSZEK had all of the information he needed to tell HDRLLC to leave the Plaintiffs alone and go to Court and get an order to repossess if he could do so legally.

71.   Instead, SUSZEK ordered or assisted his co-worker in ordering the Plaintiffs to allow HDRLLC to steal the trailer in broad daylight.

72.   Defendant SUSZEK knew or should have known the limits of his lawful authority to order the repossession of the trailer by a party without legal process, valid lien, or other court order, and when the trailer's owners are present, objecting to the repossession, and showing documentation of an exclusive ownership interest unencumbered by any lien or judgment.

73.   A reasonably competent police officer properly trained in the constitutional limitations of his authority in interjecting himself into an obviously civil matter, or in the constitutional limitations under the Fourth Amendment in seizing property without an arrest warrant, search warrant, court order, or other probable cause to believe the property is related to a crime would have known that the seizure of Plaintiffs' trailer was improper.

74. A reasonably competent police officer properly trained in the constitutional limitations of his authority when confronted with the situation as it then appeared should have referred HDRLLC to its remedies through the court system, rather than by repossession.

75. Instead of referring HDRLLC to the court system, Defendants Cunningham chose to take sides and conduct a "curbside courtroom."

76. Specifically, the Defendants SUSZEK AND STUTZMAN decided on the spot that Defendant HDRLLC was entitled to possession of Plaintiffs' property.

77. As a direct and proximate result of the conduct of the Defendants, referred to more fully throughout this Complaint, Plaintiffs suffered and continue to suffer embarrassment, indignation, humiliation, shame, outrage, anxiety, inconvenience, fear, disgrace, discomfort, loss of liberty, loss of the trailer, other expenses related to the use of their trailer – including, but not limited to, the loss of their livelihood – and the trailer's repossession, and denial of cherished constitutional rights.

78. Notwithstanding their inability to confirm that HDRLLC or anyone else, in fact, had a proper legal right to repossess the trailer, STUTZMAN and SUSZEK chose instead to interject themselves into the dispute and took sides.

79.     Specifically, they advised the Plaintiffs that they had determined that HDRLLC

        was entitled repossess the trailer and they were ordering the Plaintiffs to allow

        that to happen and get out of the way while it did.

80.     On or about April 11, 2023, Defendant RCCI sent a letter  to Plaintiff stating

        that it had possession of the trailer and it was going to auction the trailer for

        sale on May 4, 2023 on behalf of Defendant FCMI

81.     The letter sent by Defendant RCCI contained a notice of sale and description

        of the trailer – the description noted that the trailer was a 13'2" trailer and that

        the interior was covered in oil.

82.     At no time relevant did Defendant RCCI have a right to possess the trailer on

        its own behalf or on behalf of Defendant FCMI

83.     At no time relevant did Defendant FCMI have a right to possess the trailer.

84.     On May 3, 2023, Defendant RCCI received a letter sent on behalf of the

        Plaintiffs demanding return of the trailer and putting Defendant RCCI that it

        possessed the trailer illegally.

85.     In spite of Plaintiffs' letter demanding the return of the trailer, RCCI as agent

        for FCMI sold the trailer.

86.     Plaintiffs have suffered concrete, actual damages as a result of the act and

        omissions set forth herein.

## COUNT  I – Civil Rights Violation - §1983

## (FCMI, HDRLLC,
## CASEY STUTZMAN, and LINCOLN SUSZEK)

87.   Plaintiffs incorporate the previous allegations by reference.

88.   Defendant FCMI through its agents, servants, or employees, acted jointly and in concert with the Defendant police officers.

89.   HDRLLC, through its agents, servants, or employees, acted jointly and in concert with the Defendant police officers.

90.   As a result of their unlawful, malicious, reckless, and indifferent acts or omissions, the Defendant officers, FCMI and HDRLLC,, both alone and in concert, conspired to and acted under color of law but contrary to law and did deprive Plaintiffs of their rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 U.S.C. §1983, including:

   a.   Plaintiffs' right to be free from an unreasonable search or seizure of their person, as guaranteed by Amendments IV and XIV of the United States Constitution, by seizing, detaining, arresting, and prosecuting them without probable cause, a search warrant, or an arrest warrant; and

b.    Plaintiffs' right to be free from an unreasonable search or seizure of their person, as guaranteed by Amendments IV and XIV of the United States Constitution, by seizing and confiscating their trailer and refusing to return it, even though it was seized without benefit of an arrest warrant, search warrant, other legal process or court order, or other probable cause to detain it; and

c.    Plaintiffs' right to due process of law and to be free from egregious official misconduct, as guaranteed by Amendment XIV of the United States Constitution, by summarily repossessing their trailer, without first giving them their day in court.

### COUNT  II – §1983 - Municipal Liability

### (CITY OF ALPENA)

91.    Plaintiffs incorporate the previous allegations by reference.

92.    That the City of Alpena, through its respective police department, has established a practice, policy, or custom which directly and proximately caused the injuries and harm suffered by Plaintiffs, as stated more fully throughout this Complaint by:

a.     Deliberately failing to adequately supervise or discipline its officers in general, or these Defendant officers in particular, when it becomes known or apparent that the officers have violated the Fourth Amendment rights of citizens in the manner complained of herein.

b.     Deliberately taking no action when, upon information and belief, each Defendant City knew or should have known of the propensities of its officers in general, or these Defendant officers in particular, to improperly intervene in a private legal dispute by taking sides and conducting a "curbside courtroom," instead of properly referring one or all parties to their remedies under civil law.

c.     Failing to properly train its officers in the limitations of their conduct as required by the Constitution and laws of the United States.

d.     Knowingly, intentionally, deliberately, recklessly, or negligently failing to prevent the violation of the Fourth Amendment rights of the Plaintiffs, in the manner complained of in this lawsuit, as it should or must have been known to the Defendant municipalities, prior to April 2023, that its officers would be called to the scene of a dispute between a repossession company attempting to take a motor trailer, and the owners of that trailer protesting against the seizure.

18

93.   Defendant municipality's practice, policy, or custom, as set forth more fully throughout this Complaint, was the moving force that did deprive Plaintiffs of their rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 U.S.C. §1983, including:

    a.   Plaintiffs' right to be free from an unreasonable search or seizure of their person, as guaranteed by Amendments IV and XIV of the United States Constitution, by seizing and confiscating their trailer and refusing to return it, even though it was seized without benefit of an arrest warrant, search warrant, other legal process or court order, or other probable cause to detain it; and

    b.   Plaintiffs' right to due process of law and to be free from egregious official misconduct, as guaranteed by Amendment XIV of the United States Constitution, by summarily repossessing their trailer, without first giving them their day in court.

**COUNT  III –  Statutory Conversion, Receipt or Concealment**

**(FCMI, RCCI, and HDRLLC)**

94.   Plaintiffs incorporate the preceding allegations by reference.

95.   With no lien or possessory interest in the trailer, FCMI, RCCI and HDRLLC stole the Plaintiffs' trailer and when the Plaintiffs demanded it back, they refused to return it, instead selling it and thereby converted it.

96.   These Defendants actions in converting the trailer were wilful and intentional.

97.   These acts constitute a willful or intentional conversion under M.C.L. § 600.2919a entitling Plaintiffs  to recover treble the value of the trailer converted.

## COUNT IV  -- Misrepresentation

## (FCMI)

98.   Plaintiffs incorporate the preceding allegations by reference.

99.   The material representations were intended to induce the reliance of Plaintiffs.

100.   The material representations did induce the reasonable reliance of Plaintiffs.

101.   FCMI made the material representations with actual knowledge of their falsity.

102.   FCMI  made the material representations with reckless disregard to their truth or falsity.

103.   FCMI  made the material representations even though it should have known that they were false.

104.   These actions constitute a misrepresentation upon Plaintiffs.

105.   Plaintiffs suffered damages as a result of this misrepresentation.

## COUNT V  -- Breach of Contract

## (FCMI)

106.    Plaintiffs incorporate the preceding allegations by reference.

107.    The failure of FCMI to deliver conforming goods constitutes a material breach of contract.

108.    Plaintiffs suffered damages as a result of this breach of contract.

109.    Plaintiffs are entitled to declaratory relief in the form of an order stating that FCMI  had no right to repossess or use any self help measures to resolve the dispute over the conformity of the trailer.

## Demand for Jury Trial

110.    Plaintiffs demand a trial by jury in this action.

## Demand For Judgment for Relief

ACCORDINGLY, Plaintiffs request that this Honorable Court grant the following relief:

a.      Assume jurisdiction over this case including any supplemental claims.

b.      Award actual damages, jointly and severally, against all Defendants, and punitive damages against each Defendant (except the Defendant municipalities) individually, plus costs, pre-judgment and post-judgment interest, and actual attorney fees, pursuant to 42 U.S.C. § 1988.

c.      Award treble damages for statutory conversion;

d.      Such other statutory damages, costs, punitive damages, and attorney fees

as the law may provide.

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:     /s/ Adam G. Taub
        Adam G. Taub (P48703)
        Attorney for Plaintiffs
        17200 West 10 Mile Rd. Suite 200
        Southfield, MI 48075
        Phone:  (248) 746-3790
        Email:   adamgtaub@clgplc.net

Dated: May 30, 2023